Boy M. Page, S.
The sole issue involved herein is as to the validity of a claim asserted by John Marella in the amount of $6,000. The claimant offered in evidence a check dated May 31, 1955, concededly bearing the signature of its alleged drawer, the deceased, and drawn upon the Marine Midland Trust Com *910 pany of Southern New York, a Binghamton, New York, bank. On the other hand, it is conceded that no part of the body of this check was written by the deceased but by the claimant himself. The date of death of the deceased was February 25, 1955, approximately three months previous to the date borne by the check here in question.
Presumably to show the surrounding circumstances of the transaction, counsel for the claimant produced him as a witness on his own behalf. Counsel for the executrix, under section 347 of the Civil Practice Act, objected to the competency of the claimant to testify in his own behalf and, of course, this objection was sustained.
Upon the offer of this check in evidence by the claimant, its admission was objected to by the executrix on the ground that no proper foundation had been laid for its admission in that it had not been sufficiently authenticated, especially in view of the fact that its drawer had predeceased the date borne by the check.
Against this it was contended by the claimant that the check conforms in all respects to the provisions of section 20 of the Negotiable Instruments Law defining a negotiable instrument, and that the fact that the check here in question must have been postdated does not destroy its status as a negotiable instrument (citing Kuflik v. Vaccaro, 103 Misc. 239). The claimant further cited section 35 of the Negotiable Instruments Law in support of the proposition that this is a case ‘ ‘ where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved ”, and section 50 of the Negotiable Instruments Law, providing: ‘ ‘ Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration ; and every person whose signature appears thereon to have become a party thereto for value.”
Two cases most strenuously urged, one by the claimant and the other by the executrix, were both in the Surrogate’s Court of New York County, but decided by different Surrogates, both eminent jurists, former Justices of the Supreme Court who had been “ promoted ” to the office of Surrogate.
One of these two cases favorable to the estate’s side herein was Matter of Bakri (109 N. Y. S. 2d 654 [1951]), a case in which Surrogate Collins, in 1951, observed that a check is its drawer’s authorization, by way of having created the payee his agent to receive payment of its face amount upon its being presented to the drawee and that, like any other status of agency, such agency is terminated by the death of the principal (the drawer) prior to the check’s presentation for payment. *911 In this case, the court held that, when such are the facts, the check is reduced to merely one piece of evidence in support of a claim as a general creditor against the decedent’s estate, and that, in and of itself, it is insufficient to make a prima facie case for the claimant and remains ineffectual for that purpose unless and until reinforced by sufficient evidence aliunde, and that to hold otherwise would be to build inferences upon inferences drifting off into pure speculation or conjecture, which would be a very far cry from adequate support of the claimant’s burden of proof of his claim.
The other, diametrically opposed, ease was one by Surrogate Frankentharer (Matter of Kolben, 203 Misc. 1012 [1953]), in which, having, to his own satisfaction at least, distinguished all New York cases of appellate rank cited on this same question as to whether or not a check, regular upon its face, is, after the decease of its drawer, sufficient as prima facie proof of the claimant’s claim, and relying on cases and authorities of other jurisdictions, held that, because of the provisions of the Negotiable Instruments Law, there are (see Negotiable Instruments Law, § 111) “built in” covenants in a check such that the check alone is sufficient to support a prima facie case for the claimant.
It seems almost incredibly strange that in New York there seems to be neither any clearcut statutory provision nor Statewide ease law governing such a common situation as is presented in this case.
From this it might seem that our present case is one in which we are compelled to make our choice between these two New York County cases. Undoubtedly this would be so except that, in the present case, we would need to go a step further than was necessary in either of these cases in the New York County Surrogate’s Court, viz., in relation to the issue of delivery in a case where, as we find herein, the drawer had predeceased the date borne by the instrument.
Therefore, the most potent counter-contention launched by the executrix is that there is no affirmative proof or presumption of delivery of the instrument here in question and that a finding of delivery cannot be based on any presumption supplied by any provision of the Negotiable Instruments Law, and that the presumption is quite the contrary because of section 30 of the Negotiable Instruments Law, providing: “ Where the instrument or an acceptance or any indorsement thereon is dated, such date is deemed prima facie to be the true date of the making, drawing, acceptance or indorsement as the case may be.”
*912 This provision of the Negotiable Instruments Law compels the conclusion that claimant’s Exhibit 1 for Identification (the check), even when aided by the above-stated favorable presumptions of the Negotiable Instruments Law, still lacks one of the indispensable factors to make a prima facie case. At the very least, the claimant would need to produce evidence that this check, postdated to May 31, 1955, was voluntarily delivered to him by its drawer, which would necessarily have had to have been at some time previous to February 25, 1955, the date of death of the drawer.
If claimant’s claim is true — and there is a considerable degree of probability that it is — because of section 347 of the Civil Practice Act, he is, nevertheless, in an unfortunate situation unless he can, by testimony other than his own, show that this check, having been postdated to May 31,1955, was delivered to him by its drawer. Courts are cognizant that the “ dead man’s statute ”, undoubtedly, frequently does produce an unjust result. For this reason, they are, in situations wherein it is reasonably possible to do so, somewhat disposed to draw inferences in favor of a party whose ease is adversely affected by his adversary’s blocking of his own testimony in relation to a personal transaction with a person who has predeceased him.
But, because of the provision of section 30 of the Negotiable Instruments Law, on the evidentiary element of delivery, it would appear that, in the absence of proof otherwise, we must presume that delivery could not have occurred previous to the date borne by the instrument, which, in the present case, of course, would have been impossible. Whether or not, in order to make out a prima facie case, the claimant lacks any other evidentiary element, at any rate, the minimum demonstration required of him is deficient in this one respect. Therefore, upon the evidence so far presented, we are constrained to reach the conclusion that, though we admit the instrument in evidence and believe it is probable that the claimant has ‘ ‘ money coming ” from the estate, the check, in and of itself alone, is clearly insufficient to constitute a prima facie case in support of the claimant’s claim herein. In the event that counsel for the claimant should desire to endeavor to adduce further evidence which might sufficiently support an inference that delivery of the instrument here in question was made by the drawer to the drawee, ample opportunity will be accorded to counsel to do so before settlement of the decree herein.
Settle decree accordingly.